IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| HEIDI MEREDITH | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No.: _____ |
| | ) |
| NESTLE PURINA PETCARE COMPANY | ) |
| Serve:     CT Corporation System | ) |
|              (Registered Agent) | ) |
|              4701 Cox Road, Suite 285 | ) |
|              Glen Allen, VA 23060 | ) |
| | ) |
| Defendant. | ) |

## **COMPLAINT**

Plaintiff Heidi Meredith ("Plaintiff" or "Meredith"), by counsel, states as follows as her Complaint against defendant Nestle Purina Petcare Company ("Nestle," the "Company" or "Defendant").

### NATURE OF ACTION

1.        This is an action for defamation. Nestle terminated Meredith in June of 2019. Months later, however, Nestle went out of its way to try to prevent Meredith from working for one of its vendors (Old Dominion Warehouse, Inc. -- "ODW"), which stores and ships Nestle's finished products. It did this by bad-mouthing Meredith to ODW's owner, telling him that she was disgruntled and that she had "problems" while working at Nestle. This campaign culminated with a Nestle HR official telling ODW that it shouldn't use Meredith because she might "*sabotage*" Nestle's products.  ODW rejected Nestle's disparaging remarks and kept Meredith as an employee.  However, Meredith suffered significant harm.  As such, she now files this lawsuit to hold Nestle liable for its unlawful conduct.

**JURISDICTION AND VENUE**

2.      Jurisdiction is conferred on this Court herein by 28 U.S.C. § 1332.

3.      Venue is proper in this district and division pursuant to 28 U.S.C. § 1391, and Local Rule 3(B)(4), as this is the district and division where a substantial part of the events or omissions giving rise to the claim occurred.

**PARTIES**

4.      Meredith is an individual resident of Richmond, Virginia. At all relevant times herein, she is and has been a domiciliary and citizen of the Commonwealth of Virginia.

5.      Nestle is a corporation organized under the laws of Missouri with its principal place of business located at 1 Checkerboard Square, St. Louis, Missouri, 63164. For diversity purposes, Nestle is a citizen of the State of Missouri.

**FACTS**

6.      For just over four years (May 2015 to June, 2019), Meredith was employed by Nestle as a Receiving Lead Operator.

7.      On June 26, 2019, Nestle terminated Meredith for what it called "conduct." In doing so, however, the Company told Meredith that she could tell the Virginia Employment Commission whatever she wanted to about her separation and that it would not oppose any claim for unemployment benefits.

8.      Separately, the Company's local HR representative (Twinkle Oliver) also told Meredith that it was Company policy *not* to give referrals to prospective employers, and that the only information Nestle would provide to such employers was through an 800-number which would simply provide a verification of the employee's dates of employment, position, and salary.

2

9.      In or around early September, 2019, one of Meredith's former supervisors at Nestle (still with Nestle) reached out to her and asked if she would be interested in working at ODW.  ODW is an outside storage company/distribution center that Nestle uses to house and distribute its finished goods.

10.      Meredith indicated that she *would* be interested and was told to give the owner of ODW a call.  Meredith did so, and after some short negotiations with ODW, ODW offered Meredith a job.  Meredith accepted the offer.

11.      Meredith started her new job at ODW on September 16, 2019. On that same date and for the next week, however, Meredith's new boss received numerous telephone calls from two persons at Nestle about Meredith.  As part of those calls, these two employees (one of whom was Ms. Oliver and the other was the local Nestle Logistics Manager) repeatedly told ODW's owner that he should not allow Meredith to work there and that she should be fired.

12.      Even worse, in one of the calls that occurred on September 16, 2019, Ms. Oliver specifically told ODW's owner words to the effect that (i) Meredith had been fired from Nestle for insubordination; (i) she was a disgruntled former Nestle employee; (iii) she might sabotage Nestle's products; and (iv) Nestle didn't want someone working at ODW who might sabotage its products.

13.      ODW's owner was shocked.  He had already hired Meredith by the time he received the calls from Nestle and, indeed, he had previously hired a different former Nestle employee without incident.  As such, he refused Nestle's demands that he fire Meredith from employment.

14.      Nestle continued to press ODW's owner, however, and further e-mailed and called him saying that he could not allow Meredith to work at his company.  ODW's owner

continued to disagree and finally escalated the matter to Nestle's corporate headquarters in St. Louis.  At that time, Nestle's corporate office told ODW's owner that he was able to hire whoever he wanted to.

15.     Although Meredith was involuntarily terminated by Nestle, its statements about her to ODW were completely false.  Specifically, she was *not* terminated for insubordination; she was *not* a disgruntled employee; and, most importantly, she has never sabotaged a Nestle product (nor would she), she has never *threatened* to sabotage a Nestle product and has never told anyone (at Nestle or otherwise) that she would sabotage a Nestle product.

16.     Upon learning of Nestle's false factual comments to ODW, Meredith became upset, angry, and hurt.  At that time, and since that time, she has suffered substantial stress, anxiety, emotional distress, and humiliation. Indeed, even though ODW kept her, and *has kept her*, as an employee, Meredith's reputation as an employee for ODW was unlawfully tarnished by Nestle's comments and it weakened her relationship with ODW for a time.

### COUNT I -- DEFAMATION – *PER SE* AND *PER QUOD*

17.     The allegations of paragraphs 1-16 are realleged as if fully set forth herein.

18.     Meredith has been defamed by the statements of the Company (made mainly its HR employee and its Logistics employee) that are specifically referenced and set forth herein in paragraphs 11 and 12 of the Complaint, which statements were (i) made in the course and scope of the employees' duties at the Company; (ii) published and (iii) made with the intent to defame Meredith.

19.     The statements at issue are false and purport to be statements of fact, not statements of opinion. Among other things, the Company falsely stated and implied that (i) Meredith was fired by Nestle for insubordination; (ii) she would sabotage Nestle products

while working for ODW; and (iii) she was a threat to sabotage Nestle products while working for ODW.

20.     Moreover, the false statements all involve the Company's efforts to demean and disparage Meredith and to falsely accuse her of unprofessional occupational activities, unfitness to perform the duties of her job, and criminal activity and thus these statements constitute defamation *per se*.

21.     Additionally, the false statements tend to lower Meredith in the estimation of the members of the public who, *inter alia*, knew that Meredith had been fired by Nestle, knew that Meredith had been hired by ODW, and knew that Nestle had called ODW seeking to have her fired. Armed with such extrinsic facts, such persons would reasonably believe one, some, or all of the following: that Meredith had committed substantial wrongful conduct while at Nestle; that Meredith harbored animus towards Nestle; that Meredith, with her animus, was planning on sabotaging Nestle's products while working at ODW; or that Meredith, with her animus, would sabotage Nestle's products.

22.     As a proximate cause of the Company's conduct, Meredith has suffered substantial compensatory damages, including as severe mental and emotional distress, reputational harm, loss of sleep, loss of income, humiliation, embarrassment, loss of time, and other damages. As well, for purposes of her claim of defamation *per quod*, the Company's conduct has caused Meredith to suffer special damages.

23.     In addition, the statements by the Company were made intentionally, willfully, and maliciously against Meredith and with utter and conscious disregard of her rights. Importantly, the Company knowingly and consciously violated its own Human Resources policy about only providing "name, rank, and serial" information (i.e., employee work dates,

salary, and position) about former employees to prospective employers in order to make false statements about Meredith.

24.     Finally, no privileges or immunities attach to these statements, therefore, and Meredith is also entitled to punitive damages in this matter.

WHEREFORE, Plaintiff requests this Honorable Court to:

a.      Accept jurisdiction of this case.

b.      Award compensatory and presumed damages in the amount of one million dollars ($1,000,000), or some amount as may be determined at trial, to compensate Meredith for all of the damages associated with the Company's defamation of her;

c.      Award punitive damages in the amount of three hundred fifty thousand dollars ($350,000) dollars; and

d.      Grant such other and further relief as to the Court seems just and proper.

**A TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

HEIDI MEREDITH

By:     s/ Richard F. Hawkins, III
        Virginia Bar Number: 40666
        THE HAWKINS LAW FIRM, PC
        2222 Monument Avenue
        Richmond, Virginia 23220
        (804) 308-3040 (telephone)
        (804) 308-3132 (facsimile)
        Email: rhawkins@thehawkinslawfirm.net

        Counsel for Plaintiff