IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

HEIDI MEREDITH,
    Plaintiff,

    v.                                     Civil No. 3:20cv711 (DJN)

NESTLE PURINA PETCARE
COMPANY,
    Defendant.

**MEMORANDUM OPINION**
**(Denying Motion to Dismiss)**

Plaintiff Heidi Meredith ("Plaintiff") brings this action against Defendant Nestle Purina

Petcare Company ("Defendant"), alleging that Defendant defamed Plaintiff by communicating

false and defamatory statements to Plaintiff's current employer, Old Dominion Warehouse, Inc.

("ODW").  This matter now comes before the Court on Defendant's Motion to Dismiss (ECF

No. 7), which moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's

Complaint for failure to state a claim.  For the reasons set forth below, the Court DENIES

Defendant's Motion (ECF No. 7).

## I.      BACKGROUND

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept

Plaintiff's well-pleaded factual allegations as true, though the Court need not accept Plaintiff's

legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  With this principle in mind, the

Court accepts the following facts.

### A.   Factual Background

Plaintiff worked for Defendant from May 2015 to June 2019 as a Receiving Lead Operator.  (Complaint ("Compl.") (ECF No. 1) ¶ 6.)  On June 26, 2019, Defendant terminated Plaintiff for what it called "conduct."  (Compl. ¶ 7.)  At that time, Defendant told Plaintiff that she could tell the Virginia Employment Commission whatever she wanted about her separation, and that Defendant would not oppose any claim for unemployment benefits.  (Compl. ¶ 7.)  Additionally, Defendant's local human resources representative advised Plaintiff that Defendant had a policy of not giving referrals to prospective employers, and that "the only information [Defendant] would provide to such employers was through an 800-number which would simply provide a verification of the employee's dates of employment, position, and salary."  (Compl. ¶ 8.)

In early September 2019, one of Plaintiff's former supervisors, who still worked with Defendant, reached out to Plaintiff and asked her if she had interest in working at ODW.  (Compl. ¶ 9.)  ODW operates as an outside storage company/distribution center that Defendant uses to house and distribute its finished goods.  (Compl. ¶ 9.)  Plaintiff expressed interest in the job, called ODW's owner and, after short negotiations, accepted a job with the company.  (Compl. ¶ 10.)

Plaintiff started working for ODW on September 16, 2019.  (Compl. ¶ 11.)  On that day and continuing through that week, Plaintiff's boss at ODW received numerous telephone calls from two people working for Defendant.  (Compl. ¶ 11.)  Those individuals repeatedly told Plaintiff's boss that he should fire Plaintiff.  (Compl. ¶ 11.)  More specifically, during one phone call in particular, they represented that:  (1) Defendant fired Plaintiff for insubordination; (2) Plaintiff was a disgruntled former employee of Defendant's; (3) Plaintiff might sabotage

Defendant's products; and, (4) Defendant didn't want someone working at ODW who might sabotage its products.  (Compl. ¶ 12.)  Despite his shock, ODW's owner refused to fire Plaintiff. (Compl. ¶ 13.)  ODW had, in fact, previously hired another one of Defendant's former employees without incident.  (Compl. ¶ 13.)

However, Defendant continued to insist that ODW fire Plaintiff.  (Compl. ¶ 14.)  To that end, Defendant e-mailed and called ODW's owner urging him not to allow Plaintiff to work at the company.  (Compl. ¶ 14.)  ODW's owner stood his ground, escalating the issue to Defendant's corporate headquarters.  (Compl. ¶ 14.)  Defendant's corporate office determined that ODW's owner remained free to hire whomever he wanted.  (Compl. ¶ 14.)

According to Plaintiff, Defendant's statements "were completely false.  Specifically, she was not terminated for insubordination; she was not a disgruntled employee; and, most importantly, she has never sabotaged [Defendant's] product."  (Compl. ¶ 15.)

### B.      Plaintiff's Complaint

On September 11, 2020, Plaintiff filed her Complaint (ECF No. 1).  In her Complaint, Plaintiff raises one count for relief based on the above allegations.  In that count, Plaintiff brings a claim for defamation per se and defamation per quod.  (Compl. ¶¶ 17-24.)  Specifically, Plaintiff alleges that Defendant defamed her by falsely stating and implying that Defendant fired Plaintiff for insubordination, that she would sabotage Defendant's products while working for ODW and that she constituted a threat to sabotage Defendant's products while working for ODW.  (Compl. ¶¶ 17-24.)  Because the statements accuse Plaintiff of unprofessional occupational activities, unfitness to perform the duties of her job and criminal activity, Plaintiff alleges that the statements qualify as defamation per se under Virginia law.  (Compl. ¶ 20.)

3

Moreover, because the statements tend to lower Plaintiff in the estimation of the community, Plaintiff alleges that the statements constitute defamation per quod. (Compl. ¶ 21.)

From these allegations, Plaintiff seeks, among other things, compensatory and presumed damages in the amount of one million dollars ($1,000,000) and punitive damages in the amount of three hundred fifty thousand dollars ($350,000). (Compl. ¶ 24.)

### C.    Defendant's Motion to Dismiss

In response to Plaintiff's Complaint, on October 20, 2020, Defendant filed its Motion to Dismiss (ECF No. 7), moving to dismiss Plaintiff's Complaint for failure to state a claim. In support of its Motion, Defendant argues that the statements at issue do not constitute actionable statements under Virginia law. (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") (ECF No. 8) at 6-13.) Specifically, Defendant maintains that the relevant statements represent nonactionable opinions, or otherwise lack the requisite defamatory sting. (Def.'s Mem. at 6-13.) In any event, Defendant argues that, because Plaintiff has not adequately alleged malice, qualified privilege defeats her claim. (Def.'s Mem. at 13-14.)

Plaintiff filed her Memorandum in Opposition to the Motion to Dismiss on November 18, 2020 (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp.") (ECF No. 12)), and Defendant filed its Reply on November 26, 2020, (Def.'s Reply Mem. in Supp. of Mot. to Dismiss) ("Def.'s Reply") (ECF No. 13)), rendering the matter ripe for review.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will

accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## III.   ANALYSIS

### A.   The Statements at Issue Prove Actionable.

#### 1.   *The statements plausibly contain factual content.*

Defendant argues that Plaintiff fails to state a claim for defamation, because the relevant statements represent nonactionable opinion, or otherwise lack the requisite defamatory sting. (Def.'s Mem. at 6-13.) Specifically, Defendant maintains that characterizing an employee's

conduct as insubordination constitutes an opinion, because that characterization necessarily depends on the speaker's viewpoint. (Def.'s Mem. at 8.) Additionally, Defendant contends that classifying an employee as insubordinate does not carry the requisite defamatory sting, because it does not "impugn [plaintiff's] integrity or fitness for the position." (Def.'s Mem. at 9) (citing *Zarrelli v. City of Norfolk*, 2014 WL 2860295, at \*10 (E.D. Va. June 23, 2014)).) Defendant advances this same argument with respect to the statement that Plaintiff was a disgruntled employee — i.e., that such a statement constituted nonactionable opinion and proves not sufficiently defamatory. (Def.'s Mem. at 10-12.) Moreover, Defendant contends that the characterization of Plaintiff as a disgruntled employee did not relate to a single event, but instead proved "otherwise independent and address[ed] separate concepts/events/concerns." (Def.'s Reply at 11.) Finally, Defendant maintains that the last two statements — i.e., that Plaintiff "might sabotage" Defendant's products and that Defendant "didn't want someone working at ODW who might sabotage [Defendant's] products" (the "sabotage" statements) — represent predictions about a possible future event. (Def.'s Mem. at 12-13.) As such, Defendant reasons, such statements lack factual content, because Plaintiff cannot prove their objective truth or falsity. (Def.'s Mem. at 12-13.)

In response, Plaintiff urges the Court to examine the broader context within which Defendant allegedly made the statements at issue. (Pl.'s Resp. at 7-14.) To that end, Plaintiff argues that Defendant did not employ the term "insubordination" in isolation, but instead used the word as the factual basis for Plaintiff's termination. (Pl.'s Resp. at 8-9.) In other words, Plaintiff submits that her defamation claim "is not dependent on her ability to prove whether she was or was not an insubordinate employee. Rather, [Defendant's] statement that 'insubordination' was the factual basis for terminating her is capable of being objectively

verified and proven to be either true or false." (Pl.'s Resp. at 8-9.) Further, Plaintiff posits that, when taken together, the "insubordination," "disgruntled" and "sabotage" comments collectively communicate that Defendant "knows more than it is telling and has more facts in its cupboard that have yet to come out." (Pl.'s Resp. at 9-10.) The Court agrees with Plaintiff.

To state a claim for defamation under Virginia law, a plaintiff must show: (1) publication; (2) of an actionable statement; with (3) the requisite intent. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). Here, the parties dispute the second element — i.e., whether the statements at issue constitute actionable statements for purposes of Virginia defamation law. Actionable statements must essentially evince two characteristics. First, they must "contain a provably false factual connotation." *Yeagle v. Collegiate Times*, 497 S.E.2d 136, 137 (Va. 1998). Accordingly, "[s]tatements that express only the speaker's opinion and not matters of fact are not actionable as defamation because such statements cannot be shown to be false." *Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 507 (E.D. Va. 2016) (citation omitted). "Generally, '[s]tatements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion.'" *Id.* (citing *Fuste v. Riverside Healthcare Ass'n*, 575 S.E.2d 858, 861 (Va. 2003)). In short, because "pure expressions of opinion" enjoy First Amendment protection, they cannot supply the basis for a defamation suit. *Fuste*, 575 S.E.2d at 861.

However, "statements of opinion may be actionable if they have a provably false connotation." *Goulmamine v. CVS Pharm., Inc.*, 138 F. Supp. 3d 652, 660 (E.D. Va. 2015) (internal quotation marks and citations omitted). Additionally, an expression of opinion may remain actionable when it "reasonably can be construed as a statement of fact because it is laden with factual content and the underlying facts are allegedly false." *Id.* (internal quotation marks

7

and citations omitted).  In the final analysis, a court evaluating whether a statement contains a

provably false connotation — or instead represents a pure expression of opinion — must

consider the broader social backdrop against which the defendant communicated the statement.

*See Hyland v. Raytheon Tech. Servs. Co.*, 670 S.E.2d 746, 751 (Va. 2009) ("In determining

whether a statement is one of fact or opinion, a court may not isolate one portion of the statement

at issue from another portion of the statement.  Rather, a court must consider the statement as a

whole.") (internal citations omitted).  And, importantly, at the motion to dismiss stage, the Court

must assume the falsity of any statements that the Complaint alleges to be false.  *Chapin*, 993.

F.2d at 1092.

Second, actionable statements must carry the requisite defamatory sting.  *Dragulescu*,

223 F. Supp. 3d at 507.  That "sting" exists when the statement "tend[s] so to harm the reputation

of another as to lower him in the estimation of the community or to deter third persons from

associating or dealing with him."  *Chapin*, 993 F.2d at 1092 (citing Restatement (Second) of

Torts § 559).  Indeed, "[m]erely offensive or unpleasant statements are not defamatory."  *Id.*

Instead, defamatory words "are those that make the plaintiff appear odious, infamous, or

ridiculous."  *Id.*  Whether a statement proves actionable, in that it contains a provably false

factual connotation and inflicts the requisite defamatory sting, is a question of law.  *Id.*

Examined against these standards, Plaintiff's Complaint adequately alleges that the

statements at issue constituted actionable defamation within the meaning of Virginia law.  To

begin, the Court determines that the statements, when read in context, plausibly communicate

factual content.  Turning first to the "insubordination" statement, the Court agrees with Plaintiff

that the statement conveys the factual basis for Plaintiff's termination.  *See Tharpe v. Saunders*,

737 S.E.2d 890, 893 (Va. 2013) (holding that falsely attributing a quotation to plaintiff

8

constituted actionable defamation, because plaintiff's "claims are not dependent on the ability to prove [that the quotation itself was false] . . . Rather, [defendant's] statement of fact — [that plaintiff made the quotation] — if believed by the hearer as coming from [plaintiff], by its very nature is alleged to have defamed [plaintiff].").  Simply put, Plaintiff does not allege that Defendant's characterization of her as "insubordinate" constituted defamation.  (Compl. ¶ 12.) Instead, Plaintiff contends that her alleged insubordination did not cause Defendant to fire her. (Compl. ¶ 12.)  Whether Defendant terminated Plaintiff *because of* insubordination constitutes a factual assertion subject to verification.

Defendant argues that the Court should confine *Tharpe v. Saunders* to its facts. Defendant does not offer authority for that position, but instead distinguishes *Tharpe* by arguing that *Tharpe* "is a fact-specific, 'fabricated quotation' case.  It simply has no application to whether [Defendant's] characterization of [Plaintiff's] termination was a fact-based statement or an opinion."  (Def.'s Reply at 5.)  The Court disagrees.  The reasoning in *Tharpe* rested on the distinction between an alleged fact — i.e., whether the plaintiff had made a certain statement — and the underlying content of the statement itself.  *Tharpe*, 737 S.E.2d at 893-95.  Because the damage to plaintiff's reputation flowed from the defendant's misattribution of the statement, the relevant analysis focused on whether plaintiff could prove that the misattribution was false.  *Id.* Likewise here, the damage to Plaintiff's reputation does not depend on her ability to prove that Defendant did not characterize her as an insubordinate employee.  Instead, it depends on Plaintiff's ability to prove that Defendant did not, in fact, fire her because of that alleged insubordination.

In resisting this conclusion, Defendant heavily relies on *Baldwin v. Baker*, 94 Va. Cir. 366 (Cir. Ct. 2016), in arguing that "use of the term 'insubordinate' [is] necessarily based on the

9

speaker's viewpoint and her 'interpretation of the event.'" (Def.'s Mem. at 7-9.)  However, a careful reading of that case demonstrates its inapplicability here.

In *Baldwin*, plaintiffs worked for a community services organization that provided certain mental health and substance abuse services to several Virginia counties. *Baldwin*, 94 Va. Cir. at 367.  Plaintiffs contacted the board of directors of that organization and expressed concern with its management and administration. *Id.* at 367-68.  After a meeting, the board elected to take no action addressing plaintiffs' concerns. *Id.* at 368.  Subsequently, defendant Sydney Smyth ("Smyth") became the board's chair. *Id.*  Plaintiffs sent Smyth an e-mail inquiring about whether the board would act on their reports. *Id.*  Upon receiving that e-mail, Smyth rebuffed the plaintiffs, writing back to them that she "find[s] insubordination to be despicable.  It is immature and unprofessional.  Frankly, if you were my subordinate and I found you were making end runs behind my back to Board members, I would fire you on the spot. . . ." *Id.*  In addition to Smyth's remarks, the plaintiffs also alleged that the executive director of the board, defendant Susan Baker ("Baker"), defamed plaintiff Baldwin by describing her as "'insubordinate' for failing to follow [defendant's] directive to terminate the Angel Tree Program." *Id.* at 369.

In sustaining the defendants' demurrer to the plaintiffs' defamation claim against Smyth, the court observed that "the opinion is contextually limited to the act of complaining to the Board of Directors instead of [plaintiffs' immediate superior]." *Id.* at 374.  Likewise, in dismissing the plaintiffs' defamation claim against Baker, the court again emphasized that Baker tethered her characterization of Baldwin's conduct to a specific, nondefamatory factual basis:  "Baker's statement was made referencing a single failure of Baldwin by not following her superior's directive to discontinue the charity program.  Insubordination is relative to the single act of

10

failing to discontinue the charity program which is Baker's interpretation of the event." *Id.* at 372.

The reasoning in *Baldwin* does not translate to the instant case. Unlike the statements at issue in *Baldwin*, the statements here do not represent Defendant's interpretation of specifically identified conduct. Indeed, the statements in *Baldwin* proved contextually limited to describing certain workplace misdeeds in fact committed by the plaintiffs. Here, Defendant did not offer an opinion that Plaintiff acted insubordinately with respect to particular work-related conduct. Rather, Defendant asserted, as a matter of fact, that it fired Plaintiff for insubordination. Whereas the statements at issue in *Baldwin* — i.e., that the plaintiffs were insubordinate for taking their concerns directly to the board, or were insubordinate for failing to terminate a charity program — could not be proven false, the statement that Defendant fired Plaintiff for insubordination can.

Finally, Defendant submits that Plaintiff's Complaint essentially alleges a "libel-by-implication" theory, and that the Complaint cannot meet the "extraordinary burden that exists when attempting to assert" such a claim.[1] (Def.'s Reply at 7-9.) In short, Defendant argues that Plaintiff's reliance on the "insubordination" statement necessarily depends on Defendant having defamed Plaintiff by failing to disclose certain facts related to Plaintiff's termination. (Def.'s Reply at 7-9.) Therefore, Defendant reasons, Plaintiff must meet the more rigorous standards

---

[1]     Defendant also argues that Plaintiff has not appropriately alleged such a theory in her Complaint. (Def.'s Reply at 6.) Specifically, Defendant recounts Plaintiff's argument that Defendant's decision not to go into the details of Plaintiff's termination created a "sinister and negative" impression of her. (Def.'s Reply at 6.) Defendant then concludes that "none of these facts are alleged in her Complaint." (Def.'s Reply at 6.) The Court finds Defendant's argument unpersuasive for two reasons. First, Plaintiff's averments respecting the "sinister and negative" impression constitutes legal argument that Plaintiff anchored to the factual allegations in the Complaint. Second, the Court finds that the "insubordination" remark constituted a statement of fact, as explained *supra*.

that govern defamation-by-implication claims.  (Def.'s Reply at 7-9) (citing *Pendleton v. Newsome*, 772 S.E.2d 759 (Va. 2015)).)  The Court rejects Defendant's invitation to apply that heightened standard.

In *Pendleton*, the plaintiff sued school officials after her seven-year-old daughter died at school as the result of an allergic reaction to a peanut.  *Pendleton*, 772 S.E.2d at 760.  The plaintiff, a licensed practical nurse, had previously informed the school that her daughter had a severe peanut allergy and had taken the appropriate steps to ensure that the school had a healthcare action plan should the daughter become exposed to peanuts.  *Id.* at 760-61.  The child's death garnered considerable publicity, leading the defendant school officials to make public statements that then served as the basis for plaintiff's defamation suit.  *Id.* at 761-62.  For example, the defendants issued the following public statement, which proved characteristic of their public remarks on the matter:  "Key . . . is a parent's responsibility to provide the school with accurate, timely information; a health emergency plan . . . and the medicine necessary to execute the plan."  *Id.* at 761.  The plaintiff sued, arguing that the statements "were designed to convey the innuendo that [plaintiff] bore responsibility for the death of her child."  *Id.* at 761.  In response, the defendants argued that their statements were literally true and, as such, no defamation action could arise from them.  *Id.* at 764.

In rejecting the defendants' argument, the Supreme Court of Virginia noted that "Virginia law makes room for [such claims] based on a statement expressing a defamatory meaning *not apparent on its face.*"  *Id.* at 763 (emphasis added).  The court went on to recite a Fourth Circuit case analyzing these types of claims:  "[B]ecause the Constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing where *the expressed facts are literally true.*"  *Id.* at 764 (citing *Chapin*, 993 F.2d at 1092-93) (emphasis added).

12

The insubordination statement does not invoke this legal framework, because Plaintiff does not allege that Defendant's statements "expressed facts [that] are literally true." Indeed, Plaintiff explicitly alleges the contrary — i.e., that Defendant did not fire her for insubordination. (Compl. ¶ 15.) Thus, this case does not resemble *Pendleton*, where the defendants expressed literally true facts that gave rise to defamatory innuendo. Instead, Plaintiff alleges here that Defendant spoke untrue facts that, combined with the "disgruntled" and "sabotage" statements, conveyed provably false and defamatory information to ODW.

Having determined that the "insubordination" statement contains a provably false factual connotation, the Court turns to the "sabotage" and "disgruntled" statements to determine whether they too communicate factual content. In so doing, the Court keeps in mind its duty to view all the statements as a whole. *Hyland*, 670 S.E.2d at 751.

Viewing the statements in context, the Court finds that the "sabotage" and "disgruntled" statements plausibly convey factual content. In essence, the question boils down to whether a reasonable listener would understand the communication at issue as statements of facts. *See Baylor v. Comprehensive Pain Mgmt. Ctrs.*, 2011 WL 1327396, at *11 (W.D. Va. Apr. 6, 2011) ("The test for determining whether facts that may be actionable defamation have been implied is whether a reasonable listener would take [the speaker] to be basing his opinion on knowledge of facts of the sort [that] can be evaluated in a defamation suit.") (internal quotation marks and citation omitted).

In *Goulmamine*, a medical doctor ("plaintiff") sued CVS Pharmacy ("defendant") after the pharmacy began telling his patients that it would no longer fill prescriptions written by the plaintiff. 138 F. Supp. 3d at 656-57. Among other statements, the defendant's employees allegedly told patients that the plaintiff "[was] filling too many prescriptions" and that "he writes

too much pain pills and it's against the law." *Id.* at 657. Additionally, the defendant's employees opined that the plaintiff "[was] bad news," that his patients "should find another doctor" and that the plaintiff "won't be in business much longer." *Id.* The court ruled that such statements qualified as actionable, because they constituted "an opinion . . . that is verifiably false or is based on untrue facts." *Id.* at 657, 662; *see also Baylor*, 2011 WL 1327396, at *11 ("Defendants can be held liable for defamation when a negative characterization of a person is coupled with a clear but false implication that the author is privy to facts about the person that are unknown [to the listener].").

Like the statements in *Goulmamine*, the "sabotage" and "disgruntled" comments here "reasonably can be construed as a statement of fact because [they are] laden with factual content." *Goulmamine*, 138 F. Supp. 3d at 660. Specifically, those statements reasonably communicate that Plaintiff had sabotaged Defendant's products in the past — especially when viewed in light of Defendant's statement that it fired Plaintiff for insubordination. Indeed, Defendant initiated the conversation with ODW in an alleged attempt to encourage ODW to terminate Plaintiff from her employment. Moreover, Defendant did not merely express a general opinion that Plaintiff should not work at ODW, but instead articulated a specific grievance — i.e., that Plaintiff "might sabotage" Defendant's products and that Defendant did not want that sabotage to take place. The particularity of that grievance could well have led ODW to conclude that Defendant "is privy to facts about [Plaintiff] that are unknown to [ODW]." Additionally, given the context of the conversation, ODW could reasonably conclude that Plaintiff "was disgruntled" as a result of Defendant having fired her for insubordination, the factual basis for which constituted alleged attempts at "sabotage." In short, the statements, when read together,

14

are plausibly tied to a provably false factual underpinning.  Accordingly, these statements

constitute opinions based on untrue facts, and therefore reasonably communicate factual content.

Nonetheless, Defendant maintains that the "sabotage" statements represent a "prediction

about a possible future event," and therefore constitute nonactionable opinion.  (Def.'s Mem. at

12-13.)  The Court rejects that argument.  First, as mentioned above, the Court finds that the

"sabotage" statements prove laden with factual content.  Second, the authorities on which

Defendant relies do not provide the support that it seeks.

For example, in *Icenhour v. Town of Abingdon*, the plaintiff, who served as the town's

FOIA officer, alleged that the defendant (a town council member) defamed her by publicly

stating that:  "There have been more FOIA requests in recent years because the citizens don't

trust the Town; they don't trust the FOIA Officer [plaintiff].  That's obvious."  2020 WL

2553201, at *6 (W.D. Va. May 20, 2020).  In finding that such statements constituted

nonactionable opinion, the court reasoned that the defendant:

> was simply giving her opinion of the reason for the increase, based not on any
> quantifiable data regarding the motivations of Town citizens, but solely on her
> own conjecture.  This statement is not capable of being proved true or false.  The
> Town . . . has thousands of residents, and it would be practically impossible to
> interview all of them and determine whether they did or did not trust the plaintiff.

*Id.*  Thus, the court did not summarily hold that predictions or theories about future events

always prove nonactionable.  Instead, the court held that the specific statements at issue, because

they were based on the defendant's interpretation of the town's political atmosphere, constituted

nonactionable opinion.

Here, Defendant did not float conjecture unmoored to quantifiable data, but articulated a

specific grievance — that Plaintiff might "sabotage" its products.  Unlike the defendant in

*Icenhour*, Defendant here would have possessed knowledge of the factual basis for its grievance.

Specifically, while the *Icenhour* defendant could not have known what motivated the town's citizens to file so many FOIA requests, Defendant here would have known why it expressed concern to ODW that Plaintiff might sabotage its products.

Accordingly, for the foregoing reasons, the Court finds that the "insubordination," "disgruntled" and "sabotage" statements plausibly convey factual content.

### 2.    *The statements carry the requisite defamatory sting.*

The Court now turns to the defamatory sting requirement for actionable statements. As noted, Defendant contends that the "insubordination" and "disgruntled" statements do not inflict the requisite defamatory sting. (Def.'s Mem. at 7-12.)  To that end, Defendant argues that characterizing Plaintiff as insubordinate or disgruntled does not imply that she "habitually fails to perform or wants for qualities or skills necessary to [perform her job]." (Def.'s Mem. at 8) (citing *Baldwin*, 94 Va. Cir. at 372).)  Additionally, Defendant argues that the "disgruntled" statement proves otherwise independent of the other statements, and therefore the Court should analyze it as a standalone remark. (Def.'s Reply at 11.)  Plaintiff responds by arguing that the collective force of the statements made Plaintiff appear odious and infamous to ODW. (Pl.'s Resp. at 9-11.)  Specifically, Plaintiff argues that Defendant's statements cause a reasonable listener to infer unspoken facts relating to insubordination and sabotage that would carry defamatory meaning. (Pl.'s Resp. at 10-11.)  The Court agrees with Plaintiff.

As mentioned, the Court holds that the "insubordination," "disgruntled" and "sabotage" statements plausibly convey factual content.  Specifically, a reasonable listener could plausibly believe that Defendant fired Plaintiff, because she sabotaged Defendant's products.  Assuming that such statements prove false, the Court must determine whether a false accusation that an

employee committed acts of sabotage carry the requisite defamatory sting. The Court concludes that it does.

As discussed *supra*, an actionable statement must not consist merely of offensive or unpleasant words, but it must inflict the requisite defamatory sting. *Echtenkamp v. Loudon County Pub. Schs.*, 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003). Actionable statements may fall into one of two categories. *Id.* First, the general defamation standard requires statements that "tend so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* (internal quotation marks and citations omitted). Additionally, the Supreme Court of Virginia has identified four categories of statements that qualify as defamatory per se. Such statements must: (1) impute the commission of a crime of moral turpitude for which a party may be convicted; (2) impute that the person is infected with a contagious disease which would exclude the person from society; (3) impute an unfitness to perform the duties of a job or lack of integrity in the performance of duties; or (4) prejudice the party in the party's profession or trade. *Id.* (citing *Fleming v. Moore*, 275 S.E.2d 632, 635 (Va. 1981)). Thus, Virginia law requires the statements at issue to "either fit within a specific category of defamation per se or be sufficiently severe to meet the general defamation standard." *Id.* at 1063.

In *Echtenkamp*, the plaintiff, a school psychologist, brought suit against the school system and several individual defendants. *Id.* at 1049. Relevant here, the plaintiff alleged that defendants made numerous statements that constituted actionable defamation. *Id.* at 1063-64. In parsing through those statements, the court held that the following statements *did not* carry the requisite defamatory sting: "that plaintiff behaved inappropriately during a student-counseling group by insulting and contradicting [a social worker]"; "that plaintiff was inept at handling a

17

situation involving two disabled students"; "that many colleagues perceive [plaintiff] as manipulative and defensive"; and, "that plaintiff has difficulty in her relationship with her colleagues." *Id.* Conversely, the court found that the following statements *did* constitute actionable defamation: "that plaintiff was abrasive, unprofessional, and rude"; "that plaintiff altered a permission form after being told not to"; "that plaintiff misinterprets a lot and lies"; and, "that plaintiff's behavior is unprofessional and in need of corrective action." *Id.*

The Court finds that the statements at issue here prove more akin to the latter group of statements in *Echtenkamp* than the former. Indeed, by stating that it had fired Plaintiff for insubordination and that Plaintiff might sabotage its products, Defendant implied that Plaintiff lacked integrity in performing her job duties. Moreover, by couching those statements in an assessment of Plaintiff as "disgruntled," Defendant suggested that Plaintiff had motive to again commit acts of sabotage. Thus, these statements collectively "impugn [P]laintiff's abilities or character to suggest that she is unfit for her job."[2] *Id.* at 1064.

Still, Defendant relies on *Baldwin v. Baker* in arguing that an allegation of a single incident of misconduct cannot serve as the basis for a defamation claim, because it does not state or imply a "habitual course of conduct or the want of qualities or skill that the public is reasonably entitled to expect of persons engaged in the Plaintiff's profession." (Def.'s Mem.at

---

[2]     For similar reasons, the Court rejects Defendant's reliance on *Zarrelli v. City of Norfolk*, 2014 WL 2860295 (E.D. Va. June 23, 2014). There, the plaintiff alleged that her supervisor defamed her by requiring her to draft a letter that admitted to wrongdoing and improper conduct. *Id.* at *8. The court found that the letter and accompanying documents did not constitute defamation, because "[a]t most they reveal her disagreement with [her supervisor] about the rental car policy, and subsequent refusal to follow his direction — facts which [plaintiff] does not contest." *Id.* at *10. In short, the plaintiff in *Zarrelli* based her defamation claim on how her supervisor disciplined her when she disobeyed office policy. *Id.* at *2-3, 8. She did not, however, dispute the factual basis for that discipline, nor show that the defendant attacked her character in doling out the punishment. *Id.* at *10.

18

8-9) (citing *Baldwin*, 94 Va. Cir. at 374.)  Again, the Court finds Defendant's reliance on

*Baldwin* misplaced.

As discussed earlier, the statements in *Baldwin* proved contextually limited to specifically

identified misconduct committed by the plaintiffs.  *Baldwin*, 94 Va. Cir. at 372-74.  There, the

court reasoned that characterizing the plaintiffs' misconduct as insubordinate did not rise to the

level of defamation per se.  *Id.* ("A supervisor's rebuke of an employee's single failure to follow

a directive is far removed from commenting that the employee wants for skills or qualities

necessary for her position.").  The instant case, however, presents critical factual distinctions that

render *Baldwin's* reasoning inapposite.

For instance, Defendant did not disclose why it communicated to ODW that Plaintiff

"might sabotage" Defendant's products.  As such, Defendant did not contextually limit its

statement as a "rebuke of [Plaintiff's] single failure to follow a directive," but instead left open a

reasonable interpretation that Plaintiff had engaged, and could engage again, in acts of sabotage.

Such an interpretation becomes all the more reasonable when Defendant indicated that it had

fired Plaintiff for insubordination, leaving her a disgruntled ex-employee.  Indeed, the language

that Defendant employed and the broader context accompanying that language (i.e., a former

employer calling ODW to affirmatively encourage it to fire a newly hired employee) suggests

that Defendant believed, and tried to communicate, that Plaintiff remained an active threat to

Defendant's products.  As such, the language and social context here support a finding that the

alleged defamatory statements plausibly call into question Plaintiff's integrity in carrying out the

duties of her job, or otherwise render her odious, infamous or ridiculous.[3]

---

[3]     The Court rejects Defendant's argument that the "disgruntled" statement proved
otherwise independent from the other statements at issue.  (Def.'s Reply at 11.)  Plaintiff's
Complaint specifically alleges that Defendant communicated the four allegedly defamatory

For these reasons, Plaintiff adequately alleges that the "insubordination," "disgruntled" and "sabotage" statements constitute actionable defamation within the meaning of Virginia law.

### B.    Qualified Privilege Does Not Shield Defendant From Liability At the Motion to Dismiss Stage.

Finally, Defendant argues that Plaintiff fails to allege facts that would defeat the qualified privilege. (Def.'s Mem. at 13-14.) Specifically, because the communication here took place between two parties with an interest in the conversation, Defendant contends that a qualified privilege attaches to the statements. (Def.'s Mem. at 13-14.) From there, Defendant submits that the Complaint does not set forth any facts that could establish common law malice. (Def.'s Mem. at 13.) Specifically, Defendant argues that its policy of only providing neutral references through a 1-800 number does not apply here, because Defendant made the statements within the context of safeguarding its products (and not in the context of providing a job reference). (Def.'s Mem. at 13-14.) Further, Defendant points out that it provided the recommendation that led to Plaintiff securing employment with ODW, thus neutralizing any evidence of malice. (Def.'s Mem. at 14.)

In response, Plaintiff first argues that an assertion of qualified privilege represents an affirmative defense that the Court cannot consider at the motion to dismiss stage. (Pl.'s Resp. at 14-16) (citing *Berry v. GE Corp.*, 2008 WL 2726959, at *4 n.8 (W.D. Va. July 11, 2008)).) In any event, should the Court consider the qualified privilege issue, Plaintiff maintains that she has adequately alleged common law malice to overcome the privilege. (Pl.'s Resp. at 16-19.) On that front, Plaintiff contends that: (1) Defendant did not engage in similar conduct when ODW previously hired another one of Defendant's former employees; (2) Defendant had a policy of

---

statements in one phone call.  (Compl. ¶ 12.)  In any event, and as noted above, the Court must view the alleged defamation as a whole.  *See Hyland*, 670 S.E.2d at 751.

not disclosing certain information about its former employees; and, (3) Defendant had told Plaintiff that Defendant would not oppose Plaintiff's claim for unemployment benefits. (Pl.'s Resp. at 18.)  Additionally, Plaintiff maintains that Defendant employed gratuitous and inflammatory rhetoric in communicating defamatory remarks to ODW. (Pl.'s Resp. at 18-19.) The Courts disagrees that it cannot consider the qualified privilege defense on a Rule 12(b)(6) motion, but agrees with Plaintiff on the merits.

First, the Court finds Plaintiff's citation to *Berry* unavailing.  There, the Court declined to consider the qualified privilege defense, because the defendants did not raise it.  *Berry*, 2008 WL 2726959, at *4 n.8 (citing *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (explaining that the court may reach the merits of an affirmative defense only "in the relatively rare circumstances" when "all facts necessary to the affirmative defense clearly appear [ ] on the face of the complaint.") (internal quotation marks and citations omitted)).  As mentioned, Defendant has raised the defense as part of its Rule 12(b)(6) motion, thus negating *Berry's* relevance.  In any event, the Court finds that the *Goodman* rule does not apply here, given that courts in this district have held that the publication element of a defamation claim requires a plaintiff to show "dissemination of the statement to a third party where that dissemination does not occur in a privileged context." *Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 201 (E.D. Va. 2010).  Accordingly, the Court will evaluate the qualified privilege defense on the merits.

Under Virginia law, a qualified privilege attaches to "[c]ommunications between persons on a subject in which the persons have an interest or duty." *Cashion v. Smith*, 749 S.E.2d 526, 532 (Va. 2013) (citing *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000)).  Relevant here, "employment matters are occasions of privilege in which the absence of malice is presumed." *Larimore*, 528 S.E.2d at 122.  "Once a qualified privilege has attached to a communication, the

plaintiff has the burden to prove that the privilege has been lost or abused, which must be shown by clear and convincing proof." *Id.* (internal citation omitted). The Supreme Court of Virginia has set forth a "non-exhaustive list" of ways in which a plaintiff can prove that a defendant has lost or abused the privilege. *Id.* at 533. That list includes a showing that: (1) the statements were made with knowledge that they were false or with reckless disregard for their truth; (2) the statements were communicated to third parties who have no duty or interest in the subject matter; (3) the statements were motivated by personal spite or ill will; (4) the statements included strong or violent language disproportionate to the occasion; or (5) the statements were not made in good faith. *Id.* (internal quotation marks and citations omitted). A plaintiff need only prove the existence of one such element. *Id.* Although Virginia law considers the "question of whether a defendant has lost or abused the privilege [to be] a question of fact for the jury," federal courts have required plaintiffs to set forth a "sufficient allegation of malice" to survive a motion to dismiss. *Verrinder v. Rite Aid Corp.*, 2006 WL 2222675, at *4 (W.D. Va. Aug. 2, 2006). To that end, "a plaintiff can survive a motion to dismiss by alleging facts showing some greater pattern of animus by the defendant." *Id.* (citing *Echtenkamp*, 263 F. Supp. 2d at 1062).

Here, the Court finds that Plaintiff has sufficiently alleged the existence of common law malice. To start, Plaintiff alleges that Defendant continued to contact ODW's owner after the original call in which Defendant allegedly communicated the four defamatory statements. Specifically, Plaintiff alleges that after the call, ODW's owner refused Defendant's demands that he terminate Plaintiff's employment. (Compl. ¶ 13.) Nonetheless, Defendant "continued to press ODW's owner . . . and further e-mailed and called him saying that" ODW's owner "could not allow [Plaintiff] to work at" ODW. (Compl. ¶ 14.) In addition, Defendant at least plausibly acted contrary to its own policy that it would only provide certain information to future

employers. (Compl. ¶ 8.) While Defendant argues that it did not violate this policy, such an argument essentially constitutes a factual dispute, and the Court must at this stage construe the facts in Plaintiff's favor. Finally, Plaintiff argues that a similarly situated former employee of Defendant's went to work for ODW, and that Defendant did not attempt to convince ODW to terminate that employee. (Compl. ¶ 13.) Construing these facts in a light most favorable to Plaintiff, the Complaint sufficiently alleges a "greater pattern of animus" that could plausibly satisfy Plaintiff's burden later on in the litigation to prove that Defendant lost or abused the qualified privilege.

Accordingly, the Court holds that Plaintiff has adequately alleged facts showing that Defendant may have lost or abused the qualified privilege.

## IV.   CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendants' Motion to Dismiss (ECF No. 7.)

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

                                         /s/

                                       David J. Novak
                                       United States District Judge

Richmond, Virginia
Date: February 2, 2021